Tommy Lynn WEATHERSBY, Plaintiff,

v.

CONOCO OIL COMPANY, et al., Defendants.

CONOCO OIL COMPANY, Defendant-Appellant,

v.

GLOBAL MARINE, Defendant-Appellee,

and

National Supply Company, et al., Plaintiffs-Appellees.

No. 84–4039A
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 28, 1984.

Jeansonne, Briney & Goudelocke, John A. Jeansonne, Jr., Craig W. Marks, Lafayette, La., for Conoco, Inc.

Hebert & Abbott, Maurice C. Hebert, Jr., Michael E. Guillory, Roch E. Poelman, New Orleans, La., for Global Marine Drilling Co.

Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Camilo K. Sales, III, Jack Alltmont, New Orleans, La., for Nat'l Supply Co., et al.

Voorhies & Labbe, William M. Bass, Lafayette, La., for Maryland Cas. Co.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

Conoco, Inc., appeals from a summary judgment in favor of Global Marine Drilling Company. Because we find that the district court correctly interpreted the provisions of the contract between Conoco and Global Marine and that Global Marine is entitled to indemnity from Conoco under these provisions, we affirm. Nevertheless, we remand the issue of attorney's fees and costs.

## I.

Tommy Lynn Weathersby, an employee of National Supply Company, a division of Armco Steel ("National"), sued Conoco, Inc. ("Conoco"), the well and platform owner, and Global Marine Drilling Company ("Global Marine"), the rig owner, for injuries he sustained on November 17, 1981, while working on the rig which was drilling on the Outer Continental Shelf off the Louisiana coast. Maryland Casualty Company ("Maryland Casualty"), the compensation carrier for National, intervened in the lawsuit, seeking recovery of compensation and medical payments it made to Weathersby pursuant to the compensation policy it issued to National. Conoco and Global Marine filed cross-claims against each other for indemnity, each relying on the Drilling and Rework Contract ("Drilling Contract") they had executed on July 27, 1979, which was in full force and effect on the date of the accident.

Section XV of the Drilling Contract, entitled "Indemnity," provides in pertinent part:

A. Company [Conoco] agrees to indemnify and hold harmless Contractor [Global Marine] ... against any and all claims, demands or suits ... which may be brought against Contractor ... by any employee of Company....

B. Contractor agrees to indemnify and hold harmless Company ... against any and all claims, demands, or suits ... which may be brought against Company ... by any employee of Contractor....

C. Subject only to Section XIII (Uninsured Risks), Contractor shall protect, indemnify, and save Company harmless from and against all claims, demands, and causes of action of every kind and character (including cost of defense) for injury to or death of all persons who are not employees of Company or employees of Contractor under Section XV–A and B above....

Section IV(D) of the Drilling Contract, falling within the section entitled "Contractor's Obligation," provides in pertinent part:

At the option of Company, Contractor shall provide, or shall exercise reasonable diligence in the selection of others to provide or furnish, for the account of Company, any of the materials, supplies, or services that Company is obligated to furnish hereunder. Such items shall be provided or furnished subject to the following provisions:

\* \* \* \* \* \*

3. Contractor agrees that all employees or subcontractors engaged by Contractor to perform such services shall be the employees and subcontractors of Contractor hereunder, and Company agrees that all employees or subcontractors engaged by Company to perform such services shall be the employees and subcontractors of Company hereunder.

Global Marine claims indemnity under § XV(A), arguing that, because Conoco engaged the services of National, Weathersby should be considered an "employee" of Conoco under § IV(D)(3) of the Drilling Contract. Conoco claims indemnity under § XV(C), arguing that Weathersby is an employee of neither Conoco nor Global Marine. In the proceedings below, Conoco urged that § IV(D)(3) applies only to § IV(D) and does not relate to the indemnity provisions set out in § XV and that § IV does not apply because Conoco, not Global Marine, selected National as a subcontractor.

Conoco and Global Marine filed cross motions for summary judgment on the basis of the Drilling Contract. Judge W. Eugene Davis, then district judge for the United States District Court for the Western District of Louisiana, granted Global Marine's motion and denied Conoco's, decreeing that Global Marine was entitled to indemnity from Conoco under §§ IV(D)(3) and XV(A) of the Drilling Contract. The court observed that Conoco offered "no reasonable explanation for including the unusual language of § IV(D)(3) which purports to make employees of independent contractors either employees of Conoco or Global, depending upon which entity selects the contractor. Since the indemnity obligation depended upon whose employee was injured, it was very plausible for the contracting parties to establish, for the purpose of indemnity, the identity of the employer of the subcontractor's employees." The court recognized that the language of § IV(D)(3), which indicates that employees and subcontractors engaged by Conoco would be deemed employees of Conoco, reaches beyond the stated scope of § IV(D), *viz.*, the terms under which subcontractors selected by Global Marine shall provide services or equipment, but the court stated that such was the result of "poor draftsmanship" and did not create an ambiguity. Judge Davis observed: "It is apparent ... that the stated scope was expanded so that ... § IV(D)(3) covered one effect of a circumstance where Conoco selected the subcontractors." The district court entered final judgment under Fed.R. Civ.P. 54(b) from which Conoco appeals.

## II.

■ A maritime contract containing an indemnity agreement, whether governed by federal maritime or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous. *Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 (5th Cir.1983) (applying federal maritime law);

*Ogea v. Loffland Bros. Co.,* 622 F.2d 186, 189 (5th Cir.1980) (applying Louisiana law); *see also Day v. Ocean Drilling & Exploration Co.,* 353 F.Supp. 1350, 1351 (E.D.La. 1973) (Rubin, J.). A court "should construe [an] indemnity clause to cover all losses 'which reasonably appear to have been within [the parties'] contemplation.'" *Kemp v. Gulf Oil Corp.,* 745 F.2d 921, 924 (5th Cir.1984) (quoting *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 333 (5th Cir.1981)). Interpretation of the terms of a contract is a matter of law, reviewable *de novo* on appeal. *Id.; see also City of Austin v. Decker Coal Co.,* 701 F.2d 420, 425 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Matador Drilling Co. v. Post,* 662 F.2d 1190, 1195 (5th Cir.1981).

■ On appeal, Conoco reiterates its position that § XV(C) of the Drilling Contract obligates Global Marine to defend and indemnify Conoco in suits brought by any person who is not an employee of Conoco under § XV(A). Conoco urges that § IV(D)(3) modifies only § IV(D) and applies only if Global Marine, at the request of Conoco, furnishes goods or services which Conoco itself is obligated to provide while drilling is underway. Conoco suggests that, if Weathersby through his employer National had been employed by Global Marine at the request of Conoco, he would be considered Conoco's "employee" under § IV(D) of the contract. Because the services of Weathersby through National were directly engaged by Conoco, Conoco argues, § IV(D)(3) is not applicable.

The interpretation of § IV(D)(3) proposed by Conoco is not supported by a literal reading of the section. Nowhere in the section do we find support for the contention that only employees of a subcontractor hired by Global Marine at the request of Conoco would be considered employees of Conoco. The plain language of § IV(D)(3) indicates that, for whatever purpose, employees engaged by Global Marine are deemed Global Marine employees and employees engaged by Conoco are Conoco employees. It is true that the classification of employees of a subcontractor as employees of Conoco extends beyond the scope of § IV(D), which sets out the terms under which subcontractors selected by Global Marine shall provide services or equipment. But, having just set out language that classified employees and subcontractors selected by Global Marine as employees and subcontractors of Global Marine, it is not beyond conception to suppose that the drafters would include a similar classificatory statement at this point in the contract for subcontractors and employees hired by Conoco despite the fact that the provision did not neatly adhere to the topical structure of the contract. As the district court concluded, at most, this is poor draftsmanship. Hence, we agree with the district court in concluding that the only reasonable explanation for § IV(D)(3) is that it provides a test for identifying the "employer" of a subcontractor's employees for purposes of indemnity.

Conoco contends, however, that in so reading § IV(D)(3) together with the indemnity provisions of the Drilling Contract, we ignore the language of § XV(C) that subjects its provisions only to § XIII, which deals with uninsured risks. Thus, Global Marine would be obligated to indemnify Conoco in suits brought by nonemployees of Conoco and Global Marine *unless* the action involved one of the uninsured risks enumerated in § XIII for which Conoco assumed the indemnification obligation. Conoco's reading of the "subject only to" language of § XV(C) is only slightly skewed. Conoco is correct in urging that § XIII represents an exception to the obligation assumed by Global Marine under § XV(C). It is incorrect in reading the "subject only to" language as pretermitting a reading of the contract as a whole to flesh out the extent of Global Marine's obligation under § XV(C). It makes sense that the parties would include a contractual provision like § IV(D)(3) for determining which employees of subcontractors would be considered employees of either Conoco or Global Marine in order to delimit the extent of Global Marine's obligation under § XV(C).

Conoco argues that we should attribute to the term "employee" as used in § XV(C) its ordinary meaning. It quotes the dictionary definition of "employee" as "one who works for wages or salary in the service of an employer." Thus, because Conoco did not pay Weathersby's wages, he could not be considered Conoco's employee. This contention ignores the fact that an important element of service contracts like the Drilling Contract is the allocation of risk among the various parties who work in the exceedingly dangerous field of providing oil and gas from the ocean bottom.[1] The parties to the Drilling Contract allocated the risk of civil actions by specifying the circumstances under which each would indemnify the other. Providing a classificatory mechanism for who is to be considered an employee of Conoco or Global Marine effectuates this objective while precluding us from assigning the term "employee" its ordinary meaning. Thus, we hold that the district court correctly read § IV(D)(3) together with the indemnity provisions in concluding that Global Marine was entitled to indemnity from Conoco.

■ In response to the district court's query as to possible explanations for the inclusion of § IV(D)(3), Conoco suggested that § IV(D)(3) was included within the contract to limit the control and direction of independent contractors hired by Conoco and on location pursuant to § XI(A) of the Drilling Contract.[2] This section, entitled "Independent Contractor," gives Global Marine responsibility for the direction and control of all work done at the location. Conoco contends that § IV(D)(3) was added to relieve Global Marine of the responsibility of directing and controlling personnel who were on location to monitor and inspect the work for Conoco pursuant to the right reserved by Conoco in § XI(A) to have its representatives do so. Global Marine is correct in urging that § XI(A) does not mention subcontractors engaged by Conoco. Therefore, the argument that § IV(D)(3) was included to relieve Global Marine of the responsibility for directing and controlling the employees of subcontractors engaged by Conoco because they are deemed to be the employees of Conoco is untenable—especially when the subcontractor was engaged by Conoco to perform oil-related work, not to observe tests or inspect the work performed.

Global Marine argues that § IV(D)(3) was appended to the Drilling Contract to transform the contract into a "knock-for-knock" indemnity agreement whereby each party to the contract would indemnify the other for claims brought by its employees or the employees of subcontractors it hired. This view comports with the literal provisions of the contract and avoids the strained interpretation propounded by Conoco. Section XV(C) can then be read, not as imposing an obligation on Global Marine to indemnify Conoco when an employee of a subcontractor Conoco has hired sues Conoco, but as imposing an obligation on Global Marine to indemnify Conoco when suit is brought by a nonemployee of either Conoco or Global Marine. This obligation is the concomitant of Global Marine's re-

---

1. Note, *Contractual Indemnity Under Maritime and Louisiana Law*, 43 La.L.Rev. 189 (1982); *see also Boudreaux v. American Workover, Inc.*, 664 F.2d 463, 466 (5th Cir.1981), *on reh'g en banc*, 680 F.2d 1034 (5th Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *Pippen v. Shell Oil Co.*, 661 F.2d 378, 384 (5th Cir.1981).

2. Conoco proposed this argument only as an alternative to its contentions that § IV(D)(3) should not be read together with the indemnity provisions and that § XV(C) requires Global Marine to indemnify Conoco.

Section XI(A) provides:

It is expressly understood that Contractor is an independent contractor and that neither it nor its employees or subcontractors or their employees are servants, agents or employees of Company. The actual performance and superintendence of all work hereunder shall be by Contractor, under the control and direction of Contractor as to the details of the work; provided, however, Company being interested in the results to be obtained, is authorized to designate a representative, or representatives, who shall at all times have access to the drilling site and related equipment for the purpose of observing tests or inspecting the work performed hereunder by Contractor.

sponsibility conferred by § XI for directing and controlling the work on location.

Conoco lastly contends that, in the event we find the Drilling Contract ambiguous, there exist genuine issues of material fact regarding the intent of the parties in confecting the agreement, particularly §§ IV(D)(3), XV(A), and XV(C), which preclude the rendering of summary judgment. We find the contract to be unambiguous. The only reasonable conclusion to draw from the facts and the pertinent provisions of the Drilling Contract is that the parties intended for Conoco to indemnify Global Marine when suit was brought by an employee of a subcontractor hired by Conoco.

### III.

After filing its brief in this appeal, Conoco filed a motion to remand the Conoco-Global contractual indemnity claim to permit the procurement of documentary and testamentary evidence to support Conoco's claim that it is a "general contractor" and entitled to immunity under § 5(b) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b). Conoco predicates its claim on the Supreme Court's decision in *Washington Metropolitan Area Transit Authority v. Johnson*, — U.S. —, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), which held that "§§ 4(a) and 5(a) of the LHWCA render a general contractor immune from tort liability provided the contractor has not failed to honor its statutory duty to secure compensation for subcontractor employees when the subcontractor itself has not secured such compensation." 104 S.Ct. at 2836. Although we do not normally pass upon contentions not raised or decided below, the

*Washington Transit* decision was rendered after the district court's judgment was entered. Further, a recent enactment of Congress obviates the need for an extended discussion of Conoco's claim. Section 4(b) of the Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98–426, § 4(b), adds the following language to § 905(a): "For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 4." This amendment, which effectively overturned the *Washington Transit* decision, is applicable to pending claims. *Id.* § 28(a). Assuming without deciding that the LHWCA is applicable to this case, because National, the subcontractor, paid compensation to Weathersby via its compensation carrier, Maryland Casualty, Conoco cannot be deemed Weathersby's "employer." [3] *See Martin v. Ingalls Shipbuilding, Div. of Litton Systems, Inc.*, 746 F.2d 231, 232 (5th Cir.1984) (where subcontractor paid compensation to its employee, contractor was not such employee's statutory "employer" under LHWCA and is therefore not entitled to immunity under § 905(a)). For these reasons, Conoco's motion to remand the case is denied.

### IV.

Global Marine claims that it is entitled to recover attorney's fees and costs it has incurred in this action, citing cases which stand for the proposition that attorney's fees and costs are properly recoverable by an indemnitee in defending against a tort action.[4] Global Marine urges us to

---

3. There is no need, then, to remand the case for a development of the record regarding insurance coverage as we did in *Jenkins v. McDermott, Inc.*, 742 F.2d 191 (5th Cir.), *vacating in part*, 734 F.2d 229 (5th Cir.1984). *See also Meadows v. Dickson Welding, Inc.*, 593 F.Supp. 1320 (E.D.La.1984) (summary judgment denied because uncontested facts do not sufficiently support party's contention that it is a "general contractor"). Because the subcontractor, National, provided coverage to Weathersby, the language of the 1984 amendment clearly pre-

cludes Conoco from assuming "employer" status for the purpose of claiming § 905 immunity. We express no views regarding Conoco's now mooted contention that, under the theory of *Washington Transit*, a "general contractor" would enjoy an employer's immunity from a claim for contractual indemnity brought by a vessel owner. *See* 33 U.S.C. § 905(b).

4. *Odd Bergs Tankrederi A/S v. S/T Gulfspray*, 650 F.2d 652, 654 (5th Cir.1981); *Dow Chemical Co. v. Barge UM–23B*, 424 F.2d 307, 311–12 (5th

remand the case to the district court for the sole purpose of determining attorney's fees and costs incurred by Global Marine "in this action." Although both Global Marine and Conoco claimed in their pleadings pertaining to the summary judgment proceeding the right to recover attorney's fees and costs from each other, the district court failed to address the issue in ruling on the summary judgment motions or in entering final judgment.

If, in using the language "in this action," Global Marine is asserting a right to recover from Conoco attorney's fees and costs incurred in its cross-claim against Conoco, Global Marine misapprehends the law. "[U]nder a general indemnity agreement ..., the indemnitee enjoys no right to recover its legal fees incurred in establishing its right to indemnification." *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1178 (5th Cir.1981), *cert. denied*, 455 U.S. 944, 102 S.Ct. 1441, 71 L.Ed.2d 656 (1982); *see also Vallejos v. C.E. Glass Co.*, 583 F.2d 507, 510 (10th Cir.1978); *Flunker v. United States*, 528 F.2d 239, 246 (9th Cir. 1975); *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192, 198 n. 9 (8th Cir.1974); *Williams v. California Co.*, 289 F.Supp. 376, 380 (E.D.La.1968). Hence, Global Marine has no right to recover attorney's fees and costs incurred in establishing its right to indemnification vis-a-vis Conoco.

With this in mind, we remand the case to the district court for the limited purpose of determining whether Global Marine is entitled to recover attorney's fees and costs it incurred in defending against the tort action brought by Weathersby. If Global Marine has such a right, the district court should compute the amount of recovery to which Global Marine is entitled in the light of this opinion.

## V.

For these reasons, we affirm the judgment of the district court but remand the

case for the limited purpose of determining Global Marine's right to attorney's fees and costs.

AFFIRMED and REMANDED.

Cir.1970); *Lusich v. Bloomfield S.S. Co.*, 355 F.2d 770, 776 (5th Cir.1966). An indemnitee may recover attorney's fees for prosecuting a tort claim as well as defending one. *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1178 (5th Cir.1981), *cert. denied*, 455 U.S. 944, 102 S.Ct. 1441, 71 L.Ed.2d 656 (1982).