**WALTER OIL & GAS CORPORATION and Marine Drilling Management,**

v.

**SAFEGUARD DISPOSAL SYSTEMS, INC.**

Civil Action No. 95–3306.

United States District Court, E.D. Louisiana.

Oct. 28, 1996.

Charles Morris Steen, Stephanie G. McShane, Phelps, Dunbar, LLP, New Orleans, for plaintiffs.

Bruce Reginald Hoefer, Jr., Timothy Taney Roniger, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA, for defendant.

## ORDER AND REASONS

BERRIGAN, District Judge.

This matter comes before the Court on: (1) motion for summary judgment filed by Safeguard Disposal Systems, Inc. ("SDS"); and (1) motion for summary judgment filed by Walter Oil & Gas Corporation ("WOG") and Marine Drilling Management ("MarDrill") (jointly referred to as "WOG"). Having considered the record, the memoranda of counsel and the law, the Court has determined that the motion of WOG and MarDrill

should be denied and the motion of SDS should be granted for the following reasons.

The undisputed facts indicate that at all relevant times, WOG was an oil and gas production company who entered into a contract entitled "Daywork Drilling Contract" with MarDrill. Under that contract, MarDrill agreed to furnish MARINE 17, a jack-up rig owned and operated by it, along with other equipment and personnel to drill wells offshore and perform auxiliary operations and services for WOG. WOG entered into a contract entitled "Master Service Contract" whereby SDS agreed to perform certain services involving the cleaning, collection and disposal of drill cuttings and debris for WOG. Jerry Franks ("Franks"), an SDS employee was injured while using a ladder provided by MarDrill while working aboard the MARINE 17. Franks filed suit against MarDrill and WOG, and WOG undertook the defense of MarDrill in that matter. All parties in that litigation subsequently stipulated that MarDrill was solely at fault in causing Franks's injuries and agreed to a settlement in Franks's favor in the amount of $650,000. WOG paid the settlement under its indemnity agreement with MarDrill and joined with MarDrill to bring this suit against SDS seeking to enforce the indemnity and insurance provisions of the Master Service Contract between WOG and SDS.

In support of its motion for summary judgment,[1] SDS argues that the indemnity provisions, if enforceable, are inapplicable because the claim brought by WOG is not a claim for property or personal damages to WOG. Additionally, SDS argues that MarDrill is not a "subcontractor" so as to be included in the definition of "Company" in the Master Service Contract nor in the protections offered by its indemnity and insurance provisions. Furthermore, SDS argues that the Master Service Contract does not contain the express and unequivocal notification necessary to enforce an agreement to indemnify a third party for its own negligence and to name that party as an additional assured pursuant

to its insurance provisions. Finally, in the alternative, SDS argues that § 905(b) of the Longshoreman and Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et seq,* ("LHWCA") invalidates the indemnity provisions in the present case.

In support of its motion for summary judgment, WOG argues that the indemnity and insurance provisions in its Master Service Contract with SDS are valid and enforceable as a maritime contract. WOG argues for indemnity because MarDrill was a "subcontractor" included in the definition of "Company" in the Master Service Contract's preamble. It maintains that SDS was required by those provisions to indemnify and procure insurance to protect both WOG and MarDrill. WOG argues that the allocation of risks in oil and gas exploration is a standard practice and as such was within the reasonable contemplation of both WOG and SDS in entering the contract.

The United States Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), held that under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 322, 106 S.Ct. at 2552. The Court finds that the issue raised in these motions is largely a legal one, that no material fact remains in issue and that SDS is entitled to summary judgment as a matter of law.

■ Indemnity agreements in maritime contracts, whether governed by federal maritime or Louisiana law, "should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Weathersby v. Conoco Oil Co.,* 752 F.2d 953, 955 (5th Cir.1984) (citing *Lirette v. Popich Bros. Water Transport, Inc.,* 699 F.2d 725, 728 (5th Cir.1983); *Ogea v. Loffland Bros. Co.,* 622 F.2d 186, 189 (5th Cir.1980). *See*

1. The parties to this dispute agreed to reserve argument originally raised in these motions pertaining to whether WOG properly preserved its right to pursue the claim for indemnity against SDS and the applicability of maritime law to the

WOG–SDS master service contract. Pursuant to the agreement of counsel, therefore, the Court will assume that maritime law governs the issues of indemnity raised in these motions.

*also Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir.1981)). The subject indemnity provision in the Master Service Contract between WOG and SDS reads at Paragraph 9 in relevant part as follows:

> Contractor agrees to indemnify, defend and hold harmless Company from and against ... any and all claims, demands, or actions for damages to persons and/or property ... which may be brought against Company [including, but not limited to such claims, demands, or actions brought by Contractor's employees and agents ... ] incident to, arising out of, in connection with, or resulting from the activities of Contractor, its employees and agents or its subcontractors and their employees and agents, or in connection with the work to be done, services to be performed or material to be furnished under this Contract or under contracts referred to in Paragraph (1)(b) above, whether occasioned, brought about, or caused in whole or in part by the negligence of Company, its agents, employees, officers, directors, or subcontractors or by the unseaworthiness of any vessel owned, operated, or contracted by the Company or by any defective condition of any equipment of Company ... or any other cause regardless of whether such negligence, unseaworthiness defective condition or cause be active or passive, primary or secondary.

WOG's argument for the enforceability of the indemnity provision relies on the preamble to the Master Service Contract which defines "Company" to include WOG and its "affiliated companies, owners, co-owners, and joint venturers associated therewith, and any of its agents, directors, officers, employees and *subcontractors*." (Emphasis added). WOG maintains that MarDrill is a subcontractor for purposes of the Master Service Contract between WOG and SDS. However, it offers no specific legal or factual authority to support this characterization.

■ "A subcontractor is one who takes a portion of a contract from the principal contractor or another subcontractor." *Avondale Industries, Inc. v. International Marine Carriers, Inc.*, 15 F.3d 489, 494 (5th Cir. 1994). In both the Master Service Contract

between WOG and SDS and the Daywork Drilling Contract between WOG and MarDrill, SDS and MarDrill are referred to only as "Contractor." Additionally, both agreements provide that they will be regarded as "independent contractors" in relation to the performance of all obligations under the contracts. Although the terms "subcontractor" and "independent contractor" are not mutually exclusive because a subcontractor may or may not have an agency agreement with the contractor, the terms have distinct legal meanings. *Avondale*, 15 F.3d at 494. While parties to a contract are free to define terms within their agreement in any manner they see fit, the language of those definitions must surely be read so as to give them their "plain" meanings. *See: Weathersby*, 752 F.2d at 955. Here, the parties clearly intended and emphasized the intention to confer upon MarDrill the status of independent contractor and not subcontractor. Had the parties to the Master Service Contract intended to include other independent contractors in the definition of the Company in the preamble or in the indemnity provision, the term could have easily been included. It was not.

In addition, under the explicit terms of the Master Service Contract and under the facts presented, it is clear that WOG was in the position of an owner or operator, not a contractor who could subcontract to others. The Master Service Contract does contemplate at Paragraph 21 that WOG may act as drilling contractor or diving contractor, but there is no suggestion that WOG acted as a contractor for purposes of this particular agreement. The Court concludes that MarDrill cannot be considered a subcontractor and WOG cannot be considered a contractor for purposes of the Master Service Contract.

■ Finally, the Court is not convinced that WOG could prevail even if MarDrill was considered subcontractor for purposes of the preamble definition. A contract of indemnity "should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them

within the indemnity coverage." *Corbitt*, 654 F.2d at 333. Moreover, "express notice is required where a party seeks to shift his contractual liability to indemnify a third party." *Id.* It is clear that this notice is simply lacking in the Master Service Contract. Even assuming that this Court adopted WOG's argument that MarDrill was a subcontractor to WOG despite agreeing to independent contractor status in the Daywork Drilling Contract, the Court would find that insufficient notice is provided to SDS if the only reference to this third party liability consisted of inclusion of "subcontractors" in the definitional preamble.[2]

WOG appears to argue in supplemental memorandum that the insurance provisions of the Master Service Contract required that WOG and MarDrill be named as additional assureds on SDS's policies. WOG appears to suggest that this obligation was independent of any right to indemnity under the Master Service Contract. The specific contract obligations relied upon by WOG provide as follows:

> ... all policies of Contractor, whether specifically required above or not, shall be endorsed to waive subrogation against Company and against all parties for whom Company may be working and with the exception of Worker's Compensation shall name Company and all parties for whom Company may be working as an additional assured.

The insurance provisions quoted by WOG from SDS's policy provides as follows:

> ... IT IS HEREBY UNDERSTOOD THAT THE "PERSONS INSURED" PROVISION IS AMENDED TO INCLUDE ANY PERSON OR ORGANIZATION AS ADDITIONAL ASSURED ON A BLANKET BASIS WHERE REQUIRED BY CONTRACT BUT ONLY WITH RESPECT TO OPERATIONS PERFORMED BY THE NAMED INSURED PURSUANT TO A WRITTEN CONTRACT WHICH IS COVERED BY THE POLICY TO WHICH THIS IS A PART.

WOG relies on *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104 (5th Cir.1991) to support this argument.

Of course, to the extent that WOG's insurance argument relies on the inclusion of MarDrill as a subcontractor for purposes of defining "Company," that argument fails with the Court's finding that MarDrill is not a subcontractor of WOG's. In addition, there is no fact to support the finding that WOG was working *for* either MarDrill or SDS at any time relevant to this dispute, which relieves SDS of any obligation under the above quoted contractual insurance requirement to name MarDrill as an additional assured. There is nothing in Saavedra, supra, that can assist WOG in overcoming these deficiencies.

Finally, SDS originally raised the issue whether the damages incurred by WOG were the result of tortious injuries to persons or property or as a result of WOG's contractual relationship with MarDrill. Thereafter, WOG stated in its memorandum that it does not seek indemnity from SDS for its contractual liabilities owed to third parties. SDS's argument shifted to a challenge to WOG's standing to assert this claim based on the facts that WOG's liability to MarDrill is contractual and MarDrill has suffered no damages.

█ If the parties are still questioning whether the fact that the Master Service Contract provides for indemnity by SDS to WOG for WOG's contractual liabilities to third parties, this Court finds it does not. Such damages are not expressly covered by the indemnity provision and the provision is not otherwise ambiguous on this point. However, the Court has assumed adequate standing for purposes of these motions.[3]

Accordingly,

IT IS ORDERED that: (1) the motion for summary judgment filed by Safeguard Disposal Systems, Inc. is GRANTED; and (2) the motion for summary judgment filed by

---

2. This lack of specificity would undermine any distinct argument in favor of a third party beneficiary contract as well.

3. In light of the Court's ruling, it does not reach the. issue raised by SDS regarding the viability of the alleged indemnity obligation under the LHWCA.

Walter Oil & Gas Corporation and Marine Drilling Management is DENIED.